MARIE A. CAVADI, Respondent, *v.* NEW YORK CITY TRANSIT AUTHORITY, Appellant.

First Department, March 3, 1959.

*Abraham Satran* of counsel (*Helen R. Cassidy* with him on the brief; *Daniel T. Scannell,* attorney), for appellant.

*Moe Levine* of counsel (*Solomon Boneparth* and *Max Shamis* with him on the brief; *William Alden Wingate,* attorney), for respondent.

*Per Curiam.* Plaintiff has had a recovery against the New York City Transit Authority for $250,000 for injuries sustained in falling down a subway stairs at Third Avenue and 149th Street. Liability against the Authority is predicated on a claim that plaintiff's hand was pierced by a wooden splinter from the handrail on the stairs as she descended; that she was caused to recoil, to lose her balance, and to fall.

We regard this causal attribution of the fall to be incredible; and the verdict based upon a finding of such causation to be against the weight of the evidence. The accident occurred on April 21, 1955 and contemporaneous descriptions of it and, indeed, all recorded references to it, made before June 19, 1955, indicate that plaintiff fell either because she tripped or her heel caught on the subway stairs.

On June 9, after plaintiff had consulted her lawyer, she filed a notice of claim, which, making no reference whatever to any defect in the handrail or to any claim that plaintiff's hand had been pierced by a splinter from the rail causing her to lose her balance, stated merely in general terms that "claimant fell on a stairway."

On the same day that the notice of claim was filed with the Authority, however, an engineer was sent by plaintiff's lawyer to the subway station to make a detailed study of the stairway site at which claimant fell; and from the time this study was completed and its results were known, the theory that a splinter from the handrail had precipitated the fall was promptly asserted.

Ten days after this survey was made, and ten days after claimant had herself filed a notice of claim under oath in which she made no reference whatever to any part played by the handrail in her fall, she made an affidavit on an application to take her deposition in which she swore that she "was caused to fall at the place aforesaid by reason of a defective and broken handrail" (June 19). The deposition based on this affidavit to perpetuate plaintiff's testimony was sought to be taken "in good faith for possible use upon the trial."

Thus there was laid out on the record very promptly after the engineer had studied the site, a new theory of causation asserted by the plaintiff herself, consistent with the observations of physical conditions found by the engineer in the study made by him June 9, but quite inconsistent with all earlier recorded assertions of the plaintiff herself.

The deposition, although authorized by the court, was not used on the trial. Thus it did not serve the purpose for which it was taken; but the affidavit of plaintiff has served the purpose of showing that she made an early assertion, on June 19, of causation consistent with the theory pursued on the trial; and, indeed, this early assertion has been argued on appeal as lending support to plaintiff's credibility.

The inference seems unavoidable, however, that one purpose of the affidavit of June 19 was to get an early recorded assertion by plaintiff herself of the handrail causation of her fall. The close sequential movement of events from the notice of claim as filed, to the engineer's survey, to the affidavit on the motion to take the deposition, tends to associate the engineer's study and the claimant's amplified, and as amplified, different view of how the accident happened. When these events are seen in this interrelation they leave little support for the argu-

ment advanced by her counsel on appeal, that the affidavit of June 19 adds something to her credibility or makes her later assertions of causation more probable.

For it is clear from the engineer's testimony that his inspection made for plaintiff's lawyer revealed that the railing " starting from 45 inches from the top of the stairs was gouged out on the inside of the handrail for a length of about 25 inches * * * And I saw the formation of jagged pieces of wood fiber mainly along the line where the gouged-out part of the wood met the side of the wood." A diagram of the railing showing the location of the " gouged out section " and a cross section of the handrail showing the " Max. section of gouge in hand rail " was prepared by the engineer and dated the same **day.**

But all earlier statements of plaintiff which have been recorded make no reference whatever to any part played by the handrail in her fall. The policeman who talked with plaintiff after her fall recorded in his written report that plaintiff told him she caught her heel on the stairway and fell; and he testified to the same thing. The history taken at the Morrisania Hospital on admission makes no reference to any part played by the handrail; but merely states that " she fell on her back while she was going down stairs."

A record of primary significance in the case is the contemporaneous entry on the hospital chart by Dr. Ralph J. Greenberg, a neurosurgeon who examined plaintiff on the day of her admission to the hospital and who has treated her throughout her subsequent disability. This " record of consultation " signed by the physician contains this entry: " Pt. states she fell after tripping on subway steps, injuring her spine ". Nothing with reference to the handrail was noted on the record.

On cross-examination Dr. Greenberg, having summarized the history given to him as " the history was that of a fall on a subway stairs " was asked whether plaintiff had told him that her hand had come in contact with a splinter, and answered: " I remember her saying something about that, sir ".

This is not only contrary to the physician's own contemporaneous notes in his own writing made on his initial examination of plaintiff, but it seems a matter of significance that Dr. Greenberg was the " Ralph Greenberg " shown by the notice of retainer filed in this court to have been the person who referred plaintiff to her attorney, a fact which was not developed on the trial, but which was disclosed on defendant's application for a new trial on newly discovered evidence.

Moreover the only witness who actually saw the accident testified to an entirely different manner of its occurrence from the theory advanced on the trial. This witness, not shown to have any interest in the action, testified he was following plaintiff down the subway stairs so closely that as she started to fall he grabbed her coat "but it slipped out of my hand". He testified she was in the middle of the stairway when she stumbled and fell; his description of the accident leaves no place for any part played by the handrail in its occurrence. Plaintiff's son testified his mother had told him on the day of the accident that "Something stuck into my hand"; but we regard this narrative of plaintiff's version as incredible as her own direct testimony of its occurrence. On the whole record we are of opinion the verdict is against the weight of the evidence and that there should be a new trial.

The judgment and order should be reversed, on the law and the facts, and a new trial ordered, with costs to appellant to abide the event.

Breitel, J. P., M. M. Frank, Valente, McNally and Bergan, JJ., concur.

Judgment and order unanimously reversed, on the law and on the facts and a new trial ordered, with costs to appellant to abide the event.